**UNITED STATES of America**

**v.**

**ARTICLE OF DRUG consisting of undetermined quantities of vitamin, mineral, and other dietary preparations DESIGNATED as follows: B–COMPLEX CHOLINOS CAPSULES, etc.**

**Foods Plus, Inc., (Claimant), Appellant.**

**No. 15519.**

United States Court of Appeals
Third Circuit.

Argued Feb. 23, 1966.

Decided July 11, 1966.

---

3. Jenkins v. United States, 10 Cir., 361 F.2d 615; Real v. United States, 10 Cir., 326 F.2d 441.

Milton A. Bass, New York City (Bass & Friend, New York City, on the brief), for appellant.

Vincent J. Commisa, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., William W. Goodrich, Asst. General Counsel for Food and Drugs, Joanne S. Sisk, Paul M. Hyman, Attorneys, United States Department of Health, Education, and Welfare, Washington, D. C., on the brief), for appellee.

Before HASTIE and SMITH, Circuit Judges, and KIRKPATRICK, District Judge.

## OPINION

KIRKPATRICK, District Judge.

This appeal is from a judgment of the District Court condemning as misbranded, within the meaning of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 334, a quantity of vitamin products. The misbranding charged by the Government was that the labeling of the products was not in compliance with Section 352(f) (1) of the Act in that it failed to bear "adequate directions for use." The appellant, Foods Plus, Inc., the manufacturer and owner of the seiz-ed articles, filed a claim for them in the District Court.

Having earlier in the proceeding allowed the Government to amend its libel by adding a prayer for an injunction, the Court, in addition to condemning the products, enjoined the claimant from any act which would result in the products under seizure, or any similar products, being introduced into interstate commerce if misbranded in the manner which the Court had found violative of the Act.

The trial judge found as a fact that the articles seized (which comprised various quantities of some 43 different formulas of vitamin, mineral and other dietary preparations) were drugs—a finding not now disputed.

The labeling in this case consisted of a catalog of the vitamin and mineral products offered for sale by the claimant, it having been stipulated that its catalogs were labels within the meaning of the Act.

■ Whether labeling contains "adequate directions for use" of an article necessarily depends upon what it is intended to be used for. In this case, although the catalogs were in a general way suggestive of therapeutic values for the products, they contained nothing whatever to indicate for what diseases or conditions the various preparations were supposed to be beneficial and, in consequence, nothing to show how they were to be used or administered. Since failure to include this information constituted the inadequacy of labeling charged, proof of the intended use of the preparations was a vital part of the Government's case. The Government undertook to show that the claimant intended its vitamin products to be used as medicaments for the prevention, mitigation or cure of various diseases in man, and the Court made a finding to that effect. Whether the evidence was sufficient to support that finding is the point upon which this case turns.

The evidence consisted mainly of transcripts of a series of radio broadcasts by

one Carlton Fredericks whom the claimant described in its catalog as an "internationally prominent nutritionist." The broadcasts were commentaries covering the general subject of public health, principally in the field of nutrition, with heavy emphasis being placed upon the therapeutic value of vitamins and of food products fortified by vitamins, the central idea being that many of the ills of man, from simple malaise to serious diseases, can be beneficially treated by the use of vitamins and minerals as dietary supplements.

Neither Foods Plus, Inc., nor the trade name of any of its products was mentioned in any of the Fredericks broadcasts. However, advertisements of Foods Plus vitamins were presented in commercials, some of which immediately succeeded the Fredericks programs. Whenever a listener responded to Fredericks' broadcast invitations to write to him for nutritional information, advice or literature, the claimant, which had Fredericks under contract to turn over to it all such letters, would send the listener its catalog.

Fredericks' picture, together with a statement of his academic degree and his fame as a nutritionist, appeared on the first page of the catalog as well as the fact that he was the claimant's "Chief Consultant" and that he had "scientifically formulated the exclusive formulas in this catalog" and that he personally endorsed the product. In addition to the above, it was in evidence that he was employed by the claimant by written agreement as its consultant to (among other things) "aid in the sale and promotion of the products of Foods Plus." He was to receive a weekly salary and agreed not to perform any of the services specified in the contract for any person or corporation other than the claimant.

■ Upon evidence of the foregoing facts, the Court found that there existed a close relationship between Fredericks and the claimant, that the claimant adopted as its own representation Fredericks' broadcast claims that vitamins were efficacious for the prevention and treat-

ment of human disease, and that the claimant intended its products to be used for the purposes recommended by Fredericks.

The facts are practically undisputed and we find no reason to disturb the inference drawn from them by the trial judge or the conclusion that the articles seized in this action were misbranded as alleged in the libel.

The appellant relies strongly upon United States v. 24 Bottles "Sterling Vinegar & Honey, etc.", Balanced Foods, Inc., Claimant, 2 Cir., 338 F.2d 157, but that case cannot be taken as a precedent governing the present one. In both cases the issue was simply the sufficiency of evidence to prove a contested issue of fact, namely, an intention or purpose on the part of the claimant of seized goods. In the Balanced Foods case the question was whether certain condemned books which extolled the virtues of a vinegar and honey concoction sold by the claimant were "labels", and the Court held that the evidence was insufficient to establish that degree of relationship which would have made the books labels within the meaning of the Act and subject to condemnation. The Court said, "There was no evidence of any joint promotion of either book with Vinegar and Honey, however. It perhaps could be inferred that the officers of Balanced Foods realized that sale of the books would tend to promote sale of Vinegar and Honey. But there can be no inference that it sold the books for that purpose." In the present case the question was as to the intention that the articles should be used for a purpose not disclosed by the catalog. The Court held that the evidence offered to show what that intention was was sufficient. In fact there was the strongest kind of evidence that the broadcasts were used to disclose the uses intended.

■ The appellant contends that the District Court had no personal jurisdiction over it and, therefore, no power to enter the injunction. The libel was amended to ask for injunctive relief nearly a year before the case came to trial. An extensive trial was had and the

appellant raised this question for the first time in its post-trial brief. It is unnecessary to cite cases for the proposition that, if a defendant goes to trial on the merits without raising the question of personal jurisdiction, any defects in that connection are waived.

■ The question, whether or not in a condemnation proceeding under the Food and Drug Act a libel may be amended to ask for injunctive relief, has been answered in the affirmative both in United States v. 184 Barrels Dried Whole Eggs, D.C., 53 F.Supp. 652, and United States v. Various Articles of Drugs, etc., 3 Cir., 332 F.2d 286. These rulings are in accordance with the policy of disposing of an entire controversy whenever possible while all parties are before the court and litigating it. We see no reason to depart from them.

■ The appellant sees in the decision of the lower court an expansion of the power and jurisdiction of the Food and Drug Administration into areas of free speech and expresses the fear that such ruling would make independent commentaries broadcast over the radio subject to regulatory control by government agencies. It would seem that this argument is based upon a misconception of what is here decided. There is nothing new or alarming in a ruling that statements made by a lecturer employed by a party and adopted by that party as its own representations may be taken in a civil action as evidence of that party's intention as to matters in which the intention is a material issue. Nor does the fact that the representations were made in a radio broadcast affect the situation.

The appellant also complains that the injunction issued is not sufficiently specific to inform it when it would be in compliance. The provision in question prohibits the distribution of the drugs if their labeling fails to state:

"directions for use in all conditions for which such drug or device is prescribed, recommended, or suggested in its labeling, or in its advertising disseminated or sponsored by or on be-

half of its manufacturer, packer, or distributor, or in such other conditions if any there be, for which such drug or device is commonly and effectively used, thereby resulting in said drugs being misbranded within the meaning of 21 U.S.C. 352(f) (1)."

■ The Government in its argument justifies the provision on the ground that a reading of the lower court's opinion would disclose a specific meaning for the language, namely, that the directions, in order to be adequate, must also include "sufficient information to enable a layman to intelligently and safely attempt self-medication." We cannot accept this method of interpreting an injunction. An injunction must be complete and sufficiently specific in itself to instruct an enjoined party as to what acts are prohibited. We think that in this case the defect in the injunction can be cured, including in the decree the words "sufficient information to enable a layman to safely and effectively attempt self-medication without professional assistance."

■ The part of the decree referring to "other conditions if any there be, for which such drug or device is commonly and effectively used" is, we believe, beyond the proper scope of an injunction. It may well be that the appellant is unaware of how a particular preparation is commonly used somewhere in the United States or, equally, it may be that the appellant does not wish or intend to recommend its drug to be used as a competitor for some other preparation even though it might work equally well. The quoted language should be deleted.

■ The appellant further complains that the only fact finding on the subject by the trial court was that the claimant had failed to include in the labeling a list of diseases or conditions for which the products were recommended and, therefore, a decree based upon any other failure to give directions for use is beyond the scope of the findings. This, however, would seem to be mere sophistry. There being nothing in the label to suggest conditions for which the drug

928

is recommended, the Court certainly did not need to make a finding that the correct dosage was not indicated for the unlisted conditions.

 The appellant contends that the injunctive provision of the decree should not have been included because the business relationship between Fredericks and the claimant was terminated more than three years ago. It is well settled that the cessation of activities, either before or after suit is begun, does not in itself bar issuance of the injunction. The matter is in the broadest sense for the discretion of the trial court which is best qualified to form a judgment as to the likelihood of a repetition of the offense. " * * * [H]is discretion is necessarily broad and a strong showing of abuse must be made to reverse it." United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303. In the present case there was no showing of abuse.

The case will be remanded for proceedings in accordance with this opinion.