In re GRAND JURY PROCEEDINGS (Wright II), Honorable Robert A. Wright, Judge of the Court of Common Pleas of the Thirty-Second Judicial District of the Commonwealth of Pennsylvania, Appellant.

No. 80–2585.

United States Court of Appeals, Third Circuit.

Argued March 26, 1981.

Decided June 30, 1981.

Rehearing and Rehearing In Banc Denied Aug. 4, 1981.

OPINION OF THE COURT

ADAMS, Circuit Judge.

This controversy, which is before us for the second time, centers on the district court's innovative procedure for deciding whether confidential federal grand jury materials should be disclosed to a state criminal defendant. Finding that the district judge had the power to implement the contested procedure, and that his decision to adopt it did not constitute an abuse of discretion, we affirm.

### I.

The Honorable Robert A. Wright, a judge of the Pennsylvania Court of Common Pleas, currently presides over criminal proceedings against George Neagle. The Commonwealth of Pennsylvania has charged Neagle with, *inter alia*, assaulting and shooting Leonard Milano and Thomas Manley in May 1979. Manley died from injuries incurred during the incident; although wounded, Milano survived. It is expected that Milano will be a principal prosecution witness against Neagle in the state criminal trial.

At the time of the shooting, a federal grand jury in the Eastern District of Pennsylvania was investigating Milano's alleged criminal activities. As part of his discovery in connection with the state criminal trial, Neagle filed a motion in federal district court for disclosure of any grand jury materials relating to Milano that might prove exculpatory. He served the motion on the state prosecutor and the United States Attorney, but not on Judge Wright. On November 1, 1979, the district court entered an order directing the United States Attorney to assemble grand jury material relevant to Neagle's request. The court further directed the United States Attorney to transport the material to Judge Wright's chambers, and to consult with him about what evidence would constitute material disclosable under *Brady v. Maryland*, 373 U.S. 83, 83

Howland W. Abramson (argued), Philadelphia, Pa., for appellant.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Robert L. Hickok (argued), Asst. U. S. Atty., Philadelphia, Pa., for appellee, U. S. A.

Carmen P. Belefonte (argued), Kassab, Cherry, Curran & Archbold, Media, Pa., for appellee, George Neagle.

Before ADAMS and GARTH, Circuit Judges, and FISHER, District Judge.*

---

* Honorable Clarkson S. Fisher, Chief Judge of the United States District Court for the District of New Jersey, sitting by designation.

S.Ct. 1194, 10 L.Ed.2d 215 (1963). After obtaining a recommendation from Judge Wright, the United States Attorney was to communicate that recommendation to the district court, which would then determine whether Rule 6(e) of the Federal Rules of Criminal Procedure permitted disclosure.

Judge Wright objected to the district judge's proposals, and appealed from the district court order. In an opinion filed July 8, 1980, we dismissed the appeal on the ground that Judge Wright lacked standing to challenge the district court's order. *In re Grand Jury Proceedings (Wright)*, 625 F.2d 1106 (3d Cir. 1980). Because the order was directed to the United States Attorney rather than to Judge Wright, we declined to interpret it as binding on the state court judge. Following our disposition of the appeal. Neagle made a motion for compliance with the district court's order. Judge Wright filed a reply. On September 23, 1980, the district court issued a new order, this time addressed to Judge Wright as well as to the federal prosecutor, which stated in relevant part: "Judge Wright is directed to meet and confer with the United States Attorney regarding the existence of any *Brady* material in the grand jury evidence." Judge Wright again appeals.

## II.

Before considering the merits of the appeal, we confront three preliminary issues: whether the district court's order of September 23, 1980 is appealable; if it is, whether Judge Wright has standing to pursue the appeal; and if he has, whether the district court had personal jurisdiction over Judge Wright to bind him by its order.

Ordinarily, a district court's order is a "final decision" appealable under 28 U.S.C. § 1291 only if it disposes of all claims between the parties.[1] The controverted order in the case at hand does not resolve the central issue before the district court—Neagle's motion for disclosure. Nonetheless, all parties to this appeal agree that the order is "final" within the meaning of § 1291, under the doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). That is, the parties claim that the September 23 order falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review, and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546, 69 S.Ct. at 1225. *See also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468–69, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978).

■ Application of the collateral order doctrine is appropriate. The district court's order conclusively determines the responsibilities of the state court judge in the federal disclosure proceeding. Moreover, the question of how responsibility for reviewing grand jury materials should be allocated between state and federal courts is distinct from the merits of Neagle's motion for disclosure. Finally, if Judge Wright complies with the order, he would seem to be barred from obtaining review of the propriety of the order, since it is doubtful that he could appeal from the eventual adjudication on the merits of Neagle's petition. Unless Judge Wright fails to comply with the November 23 order and is held in contempt, he will have no opportunity to challenge the procedure set up by the district court. In view of the official status of the appellant, noncompliance and contempt should not be required. *See United States v. Nixon*, 418 U.S. 683, 691–92, 94 S.Ct. 3090, 3099–3100, 41 L.Ed.2d 1039 (1974).

■ The issue of standing, which proved nettlesome the first time this case came before us, presents no impediment to adjudication of the current appeal. The district court directed its original order exclusively to the United States Attorney. For this reason, we held that the first order imposed

---

1. *See, e. g., Tilden Fin. Corp. v. Palo Tire Serv., Inc.*, 596 F.2d 604, 606 (3d Cir. 1979); *Richer-* son *v. Jones*, 551 F.2d 918, 922 (3d Cir. 1977).

on Judge Wright no obligation whatsoever, and that a refusal on his part to meet with the United States Attorney would not prompt federal court sanctions. Because there was no impact on Judge Wright, he lacked standing to challenge the order. By contrast, the revised order of September 23, 1980, is directed to Judge Wright as well as to the United States Attorney. Should the state judge decline to comply with the second order, he would risk incurring the sanctions of the district court. Thus there is, in the present posture of ·the case, an "actual or threatened injury as a result of the putatively illegal" action. *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979). The threat of harm is sufficiently imminent to confer on Judge Wright standing to pursue the instant appeal.[2]

Personal jurisdiction is the final threshold issue. Judge Wright maintains that the district court lacked in personam jurisdiction over him because Neagle never served him with process and he did not appear before the district court to participate in its proceedings. We conclude, however, that the record is adequate to establish in personam jurisdiction.

As a general matter, personal jurisdiction may be acquired by a litigant's appearance or participation in the lawsuit. *Ex parte Republic of Peru,* 318 U.S. 578, 587, 63 S.Ct. 793, 799, 87 L.Ed. 1014 (1943). Moreover, objections to personal jurisdiction are waived if not timely asserted by motion or in the answer. *Pila v. G. R. Leasing & Rent Corp.,* 551 F.2d 941, 942–43 (1st Cir. 1977); *United States v. Article of Drug,* 362 F.2d 923, 926–27 (3d Cir. 1966). *See also Zelson v. Thomforde,* 412 F.2d 56, 59 (3d Cir. 1969) ("because personal jurisdiction may be conferred by consent of the parties, expressly or by failure to object … a court may not sua sponte dismiss for want of personal jurisdiction, at least where a defendant has entered an appearance by filing a motion … or otherwise"). In this case, Judge Wright filed a reply to Neagle's motion for compliance. In the reply, he declined to raise an objection to personal jurisdiction. We believe that Judge Wright thus became a party to the federal proceedings and waived any claim that the district court lacked in personam jurisdiction.

### III.

On the merits, Judge Wright can be understood to assert two related objections: that the district court lacked the power to direct him to confer with the United States Attorney, and that exercise of this power, if it existed, amounted to an abuse of discretion. The power question might seem logically antecedent to the abuse of discretion issue. The court's authority to enter the order, however, depends on whether the order was reasonably calculated to achieve the ends of justice. This question is inseparable from our inquiry into the court's discretion. For this reason, we initially will inquire into whether, assuming he had authority, the district judge abused his discretion in issuing the contested order.

### A.

In the typical case involving a motion for disclosure of grand jury materials, the court to whom the disclosure request is addressed is also the supervising authority over the grand jury. In such a situation, there is no doubt that the tribunal is well-situated to ascertain whether the prerequisites to disclosure under Rule 6(e)(3)(C) have been met,[3] that is, whether the material sought

---

**2.** Moreover, Judge Wright may be understood to complain of actual, as well as threatened, "injury." He asserts, for example, that the district court's order violates principles of federal-state "comity" embedded in the Constitution. Even absent the possibility of contempt, this assertion might be understood as a claim of present constitutional injury. Although we disagree with the merits of this argument, *see* Part II B *infra,* the assertion of present harm might suffice to confer standing. *See Duke Power Co. v. Carolina Envt'l Study Group,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978) (standing requirement satisfied when plaintiff has suffered "distinct and palpable injury" traceable to challenged conduct); *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975) (same).

**3.** Rule 6(e)(3)(C) provides in pertinent part:

"is needed to avoid a possible injustice in another judicial proceeding, . . . the need for disclosure is greater than the need for continued secrecy, and [the] request is structured to cover only material so needed." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979). *See also Dennis v. United States*, 384 U.S. 855, 869–72, 86 S.Ct. 1840, 1848–50, 16 L.Ed.2d 973 (1966); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958) (applicant must show that without disclosure a defense would be greatly prejudiced or an injustice done).

Complications arise when, as here, grand jury material is sought by a defendant preparing for trial before a court different from the one that supervised the grand jury. In this situation, the court in charge of the grand jury is the most suitable to determine the need for continued secrecy, while the court in which criminal charges are pending may be the most competent to evaluate the defendant's need for the requested materials. The district judge in the present case elected a cooperative arrangement, designed to accommodate these different areas of competence, in which he reserved for himself the final decision on the Rule 6(e) motion, but directed the state judge to assess the defendant's need for disclosure. Because the district courts have discretion under Rule 6(e) to fashion the proper response to requests for disclosure, *see Douglas Oil Co. v. Pacific Stops Northwest*, 441 U.S. at 228, 99 S.Ct. at 1677; *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1323 (1959), the question before us is whether the district court abused its discretion in prescribing this allocation of responsibility.

To evaluate the propriety of the district court's action, it will be helpful to enumerate the various methods through which Neagle's request might have been presented and decided. Analytically, at least three possibilities suggest themselves: the motion might have been made to the state court and resolved there without consultation with the federal court; the motion might have been presented to the federal court and adjudicated there without consultation with the state court; or responsibility for deciding the motion, wherever brought, could have been shared between the interested tribunals.

The first possibility need not detain us, inasmuch as Neagle presented his motion to the federal, rather than the state court. There is, moreover, some doubt whether the Rule 6(e) motion could have been brought initially to the state court, let alone decided there; for the Supreme Court has stated that "in general, requests for disclosure of grand jury transcripts should be directed to the court that supervised the grand jury's activities." [4]

Judge Wright endorses the second theoretical procedure: having been filed in federal court, the Rule 6(e) motion should have been decided there, with the federal court evaluating both the need for continued secrecy and Neagle's interest in disclosure. The Supreme Court, however, foreclosed this approach in *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). In that case, civil antitrust litigation in the District of Arizona proceeded contemporaneously with a grand jury investigation of the defendants in the Central District of California. The civil plaintiffs moved the California district court for disclosure of the grand jury proceedings, and that court, without seeking the assistance of the Arizona tribu-

Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may . . . be made—
    (i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or
    (ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

4. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 226, 99 S.Ct. 1667, 1677, 60 L.Ed.2d 156 (1979).

nal, ordered release of portions of the grand jury transcript, on the ground that a "particularized need" for disclosure existed. The Supreme Court, however, held the disclosure an abuse of discretion. The Court noted that the California district judge "readily conceded that he had no knowledge of the civil proceedings pending several hundred miles away in Arizona:"

> Appreciating that it was largely ignorant of the Arizona civil suits, the [California] court nonetheless made a judgment concerning the relative needs for secrecy and disclosure.... A court more familiar with the course of the antitrust litigation might have seen important [indications] that disclosure would likely be of little value to respondents, save perhaps as a mechanism for general discovery. Alternatively, the court where the civil proceedings were pending might have considered disclosure at that point in the litigation to be premature.

*Id.* 441 U.S. at 229–30, 99 S.Ct. at 1678–79. The Supreme Court held that the deficiencies in the California court's knowledge of the Arizona actions rendered its ruling on disclosure an abuse of discretion.

Analogously, the district judge in the case at bar has not monitored the criminal proceedings against Neagle in the state court, and is in no better position to balance the need for secrecy against the value of disclosure than was the California district judge in *Douglas Oil*. There is, moreover, an even greater need for the district court here to be aware of the defendant's situation, since the controversy is criminal in nature. *See Dennis v. United States*, 384 U.S. 855, 870–71, 86 S.Ct. 1840, 1849–50, 16 L.Ed.2d 973 (1966). Given *Douglas Oil*, it appears that the district court would abuse its discretion if, following Judge Wright's suggestion, it unilaterally ruled on the disclosure motion, without consulting the state court.

In light of the inadequacies inherent in leaving the disclosure decision entirely in the hands of either the state or federal court, the district judge in this case was compelled to adopt some version of the third possible approach to disclosure: to seek some accommodation between the court in a position to evaluate the need for secrecy and the court competent to assess the defendant's interests. *Douglas Oil* itself suggests one form for such an accommodation. The Supreme Court directed the California district court to make "a written evaluation of the need for continued grand jury secrecy and a determination that the limited evidence before it showed that disclosure might be appropriate." 441 U.S. at 230, 99 S.Ct. at 1679. The California court would send its evaluation to the Arizona federal court, and would delegate to the latter court the responsibility for deciding the motion. The Arizona court would then be fully competent to resolve the issue, since it would be "armed with its special knowledge of the status of the civil actions," *id.*, as well as with the California court's evaluation.

Transposed to the present case, the *Douglas Oil* approach would direct the district court to appraise the need for grand jury secrecy and to convey this recommendation to the state court. Judge Wright then would decide the disclosure motion based on his special knowledge of the criminal proceedings against Neagle as well as on the district court's evaluation.

Sound arguments, however, counsel against importing the *Douglas Oil* procedure in this matter. It is not at all clear, for instance, that a state court has the power, under the Federal Rules, to order disclosure of federal grand jury materials. No case brought to our attention holds that state courts possess the requisite authority;[5] indeed, before *Douglas Oil* several courts had indicated that disclosure powers were confined not merely to the federal courts, but to the federal court that convened the grand jury.[6] Construction of the

---

5. *But cf. In re Grand Jury Proceedings (Wright)*, 625 F.2d 1106, 1110 (3d Cir. 1980) (Gibbons, J., dissenting) (no case precludes state judge from resolving Rule 6(e) motion).

6. *See Illinois v. Sarbaugh*, 552 F.2d 768, 772–73 (7th Cir.), *cert. denied*, 434 U.S. 889, 98 S.Ct.

Federal Rules casts further doubt on the capacity of state courts to decide Rule 6(e) motions. Although Rule 6(e)(3)(C)(i) does not, by its terms, specify which court, state or federal, should make the ruling on disclosure, terms in the Federal Rules generally are given a federal reference. *See* Fed.R. Crim.P. 54(c). The Rules, moreover, apply only to federal courts. *See* Fed.R.Crim.P. 1, 54(a). It is reasonable to infer, therefore, that Congress intended a federal court to make the Rule 6(e) determination.

■ However, we need not decide the limits of a state court's power to direct release of materials in the custody of a federal grand jury. Rather, we note the uncertainties surrounding the existence of such power as indicating that the district court in the case at bar did not act unreasonably in declining to delegate to the state court the responsibility for ruling on the disclosure motion. We cannot say that the court abused its discretion when it did not adopt the closest analogue to the *Douglas Oil* procedure.[7]

Notwithstanding the reservations about application of the *Douglas Oil* model, it remains to be seen whether the procedure which the district court adopted—consultation with the state court but retention by the district judge of final responsibility for the disclosure decision—is an acceptable alternative. We conclude that it is. By requiring the state court's recommendations

with respect to the defendant's need, the procedure vindicates the policies underlying *Douglas Oil*: each tribunal will evaluate that aspect of the disclosure determination which it is most competent to consider, and the ruling court will have the benefit of the other court's suggestions. The procedure thus avoids the uninformed, unilateral decisionmaking that *Douglas Oil* precludes, while maintaining the federal decisionmaking role that the Rules arguably mandate. We also note that the district judge has built into his order a fair measure of flexibility. The court has stated that "it will be available at any time to consult directly with the State Judge if the State Judge deems it helpful." We interpret this statement to embrace the possibility that the district court, after making its initial ruling, will entertain subsequent recommendations offered by the state judge, should the latter's knowledge of the grand jury materials convince him that further disclosure is called for at a later date.[8]

The procedure which the district court adopted is not without precedent. In *Gibson v. United States*, 403 F.2d 166 (D.C.Cir. 1968), a federal grand jury had returned a no true bill against the defendant. Thereafter the United States Attorney initiated prosecutions by information in the District of Columbia Court of General Sessions. The defendant then filed a motion in the district court for pretrial production of tes-

262, 54 L.Ed.2d 174 (1977); *Gibson v. United States*, 403 F.2d 166, 167 (D.C.Cir.1968).

**7.** The Supreme Court in *Douglas Oil* acknowledged that the procedure adopted there might not be appropriate in every case where expertise in evaluating the Rule 6(e) prerequisites is distributed between two courts. *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. at 231, 99 S.Ct. at 1680 ("We do not suggest, of course, that [the approved] procedure would be required in every case arising under Rule 6(e). Circumstances that dictate the need for cooperative action between the courts of different districts will vary.") Absent rule making by Congress, we think that the district courts retain discretion to assess the need for, and extent of, "cooperative action."

**8.** In his brief, Judge Wright conjectures that compliance with the district judge's order may ultimately present him with a dilemma. If the

state judge recommends disclosure of materials which the federal judge later decides not to release, the state judge may find that he possesses knowledge of materials he believes should be released to a defendant in his court, yet he will be powerless to grant disclosure. While we recognize this problem as a theoretical possibility, we believe that the provision for continued consultation between the federal and state judges will minimize the risk of its occurrence. Moreover, the potential dilemma can be completely avoided only by vesting responsibility for the Rule 6(e) determination in the state court, or by directing the federal court to make the determination without consulting the state court. But Judge Wright does not endorse either alternative, and for reasons given above, serious objection can be made to both suggestions.

timony given to the federal grand jury. The district court, adopting a procedure similar to that in issue here, refused to grant access to the grand jury testimony in the absence of a preliminary finding by the Court of General Sessions that disclosure of the testimony was warranted.

On appeal, the District of Columbia Circuit approved the district court's approach, stating:

[T]he government argues that the District Court established a sound administrative procedure for cases of this sort by refusing to grant access to the grand jury testimony without a request or certification by the Court of General Sessions that production would be warranted. The procedure suggested by the Government is attractive. If the defendant prosecuted in the Court of General Sessions first requested that court to make such a certification, the District Court could rely upon a finding by the court where the case was pending; it would not face the need itself to examine the circumstances of a case in which it was not otherwise involved.

*Id.* at 167. The procedure employed by the district court in the present case differs only slightly from that involved in *Gibson*. It requires Judge Wright to inspect the requested grand jury materials and to advise the district court as to their relevancy to the state criminal proceedings, but does not require him to make a request or certification. To be sure, *Gibson* is not entirely persuasive as authority: the decision rested to some extent on the premise that only the court that convened the grand jury could order disclosure of its materials, *see id.*, a premise which *Douglas Oil* overruled.[9] Nonetheless, *Gibson*, while not controlling, reinforces the conclusion that the district judge in the case at hand did not abuse his

discretion in resorting to the disputed procedure.

We conclude that the district judge's order is reasonably calculated to accommodate the competing values of grand jury secrecy and disclosure to interested defendants. We further conclude that the procedure is consistent with the guidelines that the Supreme Court established in *Douglas Oil*. That being the case, we find that the court's order does not embody an abuse of discretion.

### B.

A finding that the district court designed a reasonable method for resolving the Rule 6(e) issue does not end our inquiry. Notwithstanding the advantages of the procedure, we may sustain the court's order only if that tribunal had the power to charge Judge Wright to confer with the United States Attorney. The appellant contends that the district judge lacked the requisite authority. The argument in this regard essentially is two-fold: it is asserted first, that the district courts lack power to bind any third party to assist in the determination of Rule 6(e) questions, and second, even assuming district courts might exercise this power in some circumstances, that they are precluded from binding state court judges.

The starting point of our inquiry into district court power is the All Writs Act, 28 U.S.C. § 1651(a). The Act provides:

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

The Act, whose earliest antecedents are Sections 13 and 14 of the Judiciary Act of 1789,[10] does not vest plenary power in the

---

**9.** *Gibson* is also distinguishable because of the unique symbiotic relationship that existed between the federal and local courts of the District of Columbia at the time of the decision. For instance, the United States Court of Appeals was then the final appellate tribunal for decisions rendered by the local courts. Thus the District of Columbia Circuit enjoyed a measure of supervisory power over the local

courts which is not generally available to federal courts with respect to state courts.

**10.** Section 13 concerned writs of mandamus and prohibition, *see* 1 Stat. 80 (1789), while Section 14 conferred power to grant writs of scire facias, habeas corpus, "and all other writs not specifically provided for by statute, which may be necessary for the exercise of [federal

federal courts. Rather, it provides them with the procedural tools necessary to exercise their limited jurisdiction.[11] The language of the Act suggests two fundamental limitations on its scope: the purpose of an order issued pursuant to the Act must be to aid the court in the exercise of its jurisdiction, and the means selected must be comparable to a common law writ.[12]

■ We have no doubt that the first of these prerequisites is satisfied in the case at hand. The district court, as custodian of the grand jury materials, had jurisdiction to entertain a motion for disclosure made under Rule 6(e). The court designed its order to aid the exercise of this jurisdiction by structuring opportunities for the type of consultation with the state court that *Douglas Oil* seems to require. In light of the Supreme Court's guidelines concerning Rule 6(e), a disposition similar to that prescribed by the district court would seem, in the terms of the All Writs Act, "necessary or appropriate" to the exercise of federal jurisdiction.

It is not incumbent upon us, however, to decide whether the specific order at issue here is "necessary," in some rigorous sense of that term. In *Adams v. United States ex rel. McCann*, 317 U.S. 269, 273, 63 S.Ct. 236, 239, 87 L.Ed. 268 (1942), decided under the predecessor to Section 1651, the Supreme Court held that an inferior tribunal "is not limited to issuing a writ [under the All Writs Act] only when it finds that it is 'necessary' in the sense that the court could not otherwise physically discharge its ... duties. Unless appropriately confined by Congress, a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." The district court in the present case determined that the consultation pro-

cedure he resorted to would aid him in the performance of his duties under the Federal Rules of Criminal Procedure, and thereby would help "achieve the ends of justice." After *Douglas Oil*, we cannot say that this judgment was flawed. Thus the first prong of the Section 1651 standard is satisfied.

In addition to assisting the exercise of federal jurisdiction, an order made pursuant to the All Writs Act must be "agreeable to the usages and principles of law." In this context as well, Section 1651 tolerates a flexible approach. In *Price v. Johnston*, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948), where the Supreme Court recognized the power of a court of appeals to command that a state prisoner be brought before it to argue his own appeal, the Court declared that federal tribunals, acting pursuant to the All Writs Act, are not limited to remedies available at common law when the original Judiciary Act was adopted in 1789. The Act is not "an ossification of the practice and procedure of more than a century and a half ago," *id.* at 282, 68 S.Ct. at 1058, but "a legislatively approved source of procedural instruments designed to achieve 'the rational ends of law,'" *id.* (quoting *Adams v. United States ex rel. McCann*, 317 U.S. at 273, 63 S.Ct. at 239). Thus when justice requires "the use of a variation or a modification of an established writ," federal courts will not be constrained by the ordinary forms and purposes of legal process. 334 U.S. at 283–84, 68 S.Ct. at 1059–60.

The Supreme Court supplied further instruction on the requirement that writs be "agreeable to the usages and principles of law" in *United States v. New York Telephone Co.*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977). The Court there held that a district judge had the power to order a third party telephone utility to assist with

---

court] jurisdiction, and agreeable to the principles and usages of law," 1 Stat. 81 (1789).

11. *See Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283, 1289 (9th Cir. 1979); *United States v. RMI Co.*, 599 F.2d 1183, 1185 (2d Cir. 1979); *Ford v. Carballo*, 577 F.2d 404, 407 (7th Cir. 1978).

12. *See United States v. New York Tel. Co.*, 434 U.S. 159, 187, 98 S.Ct. 364, 379, 54 L.Ed.2d 376 (1977) (Stevens, J., dissenting); *Price v. Johnston*, 334 U.S. 266, 279–82, 68 S.Ct. 1049, 1057–58, 92 L.Ed. 1356 (1948); *United States v. RMI Co.*, 599 F.2d 1183, 1185 (3d Cir. 1979).

the installation and use of pen registers.[13] Along with deciding that the company's assistance was essential to implement surveillance the district court had ordered under Federal Rule of Criminal Procedure 41, the Court considered the form of the order, which, New York Telephone argued, exceeded traditional bounds by directing the conduct of a third party. The Court isolated several factors relevant to its approval of the district judge's order. Although the order purported to bind a company that had engaged· in no wrongdoing and was not a party to the original action, federal court power under Section 1651 extends to all persons who "are in a position to frustrate the implementation of a court order or the proper administration of justice, . . . and encompasses even those who have not taken any affirmative action to hinder justice." *Id.* at 174, 98 S.Ct. at 373. The courts do not possess unlimited authority to impose duties upon third parties, but their action will generally be upheld if the burden imposed is not "unreasonable." *Id.* at 172, 98 S.Ct. at 372. Relevant to an inquiry concerning reasonableness are the connection of the third party to the original controversy and the burdensomeness of the court's directive. *Id.* at 174–75, 98 S.Ct. at 373–74.

■ Judged by the standards of *Price v. Johnston* and *New York Telephone Co.*,[14] the district court order at issue here would seem "agreeable to the usages and principles of law." Although Judge Wright is not a party to the dispute over disclosure of the grand jury materials, his assistance could prove valuable to a proper resolution of that controversy, since he is in a better position than the district judge to evaluate Neagle's need for access to confidential materials. Indeed, as in *New York Telephone Co.*, the assistance of this third party might

be indispensable since, following *Douglas Oil*, it appears that the district court may not rule on the motion for disclosure without some participation by the state tribunal. In addition, nothing in the record suggests that the court order inflicts unduly burdensome obligations on Judge Wright. The order contemplates a meeting between the United States Attorney and the state judge, to be arranged "at the State Judge's earliest convenience." Although the state judge is directed to make a recommendation of what evidence may constitute *Brady* material, he does not bear the burden of communicating his views to the district court; that obligation is imposed on the government attorney. Further, the district court represents that it will be "available at any time" to consult with the state judge if the latter deems it helpful. Under the circumstances, we conclude that the district court order, although directed to a third party, is conducive to the proper administration of justice, and distributes obligations in a reasonable and non-burdensome manner.

■ The status of the appellant as a state court judge raises special concerns. Judge Wright asserts that the instant case poses issues of federal-state "comity," and that the district court, in framing its order, seemed to regard the state court as an inferior tribunal in a unitary court system, rather than as a court of an independent and coordinate judicial structure. In so doing, it is argued, the district judge engendered "needless friction" between the two court systems, in violation of *Juidice v. Vail*, 430 U.S. 327, 334, 97 S.Ct. 1211, 1216, 51 L.Ed.2d 376 (1977).

Although mindful of the independent status, qualified by the Supremacy Clause, of the state courts, we fail to see how the order at issue here unduly intrudes into the

---

13. A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released. It does not overhear oral communications, nor does it indicate whether calls are actually completed. *See United States v. New York Tel. Co.*, 434 U.S. at 161 n.1, 98 S.Ct. at 366 n.1.

14. Following *New York Telephone Co.*, we stated that the basis for "relief against a third party is not culpability, but practical necessity." *Pittsburgh-Des Moines Steel Co. v. United Steelworkers of America*, 633 F.2d 302, 307 (3d Cir. 1980). *See also Bullock v. United States*, 265 F.2d 683, 690–91 (6th Cir. 1959) (§ 1651 grants power to enjoin non-parties to prevent interference with valid court order).

sensitive area of federal-state relations. The state court judge is not immunized from an order entered pursuant to Section 1651 simply by his status as a *state* officer. Abundant precedent exists for federal court directives to state officials. In *Price v. Johnston,* for example, the prisoner was in the custody of the State of California, and the order that the Supreme Court ratified directed the state warden to produce the prisoner for his oral argument in federal court.[15] Historically, the ancient writ of habeas corpus ad testificandum, recognized at least since *Ex parte Bollman,* 8 U.S. (4 Cranch) 75, 97, 2 L.Ed. 554 (1807), as within a federal court's power to grant, has been used to direct a state official to produce a state prisoner in federal court so that he might testify or stand trial.[16]

■ Just as status as a state official will not automatically insulate a person from an otherwise proper order issued under the All Writs Act, neither will identity as a member of the judiciary erect an impenetrable barrier to such directives. Again, the historic writs contemplated occasional mandates from one judicial body to another; the writs of habeas corpus ad faciendum et recipiendum[17] and certiorari, for instance, issued between courts. Nonetheless, the combination of state and judicial elements embodied in a state court raises special problems concerning the proper relations of the federal and state sovereigns.[18] A federal court, for example, ordinarily may not issue a writ of mandamus to compel a state court to exercise a jurisdiction entrusted to it,[19] nor may a federal court (with the exception of the Supreme Court) review a decision of a state tribunal through a writ of certiorari.[20] The ban on federal directives to state courts is not absolute, however. Thus the Anti-Injunction Act,[21] while

15. The most common form of habeas petition, in which a state court prisoner alleges that his custody violates the Constitution or laws of the United States, will, if successful, result in a writ directing a state official to release the petitioner. However, because 28 U.S.C. § 2254 explicitly authorizes the granting of this writ, the frequent use of this version of the habeas writ does not bear on a federal court's authority pursuant to the All Writs Act to direct state officers.

16. *See Ballard v. Spradley,* 557 F.2d 476, 480 (5th Cir. 1977); *Stone v. Morris,* 546 F.2d 730, 736–37 (7th Cir. 1976); *In re Thaw,* 166 F. 71, 74–75 (3d Cir. 1908). *See also Ex parte Dorr,* 44 U.S. (3 How.) 103, 105, 11 L.Ed. 514 (1845).

17. According to Blackstone, the writ of habeas corpus ad faciendum et recipiendum "issues out of any of the courts of Westminister Hall, when a person is sued in some inferior jurisdiction, and is desirous to remove the action into the superior court, commanding the inferior judges to produce the body of the defendant, together with the day and cause of his caption and detainer ... to *do and receive* whatsoever the King's court shall consider on that behalf." 3 W. Blackstone, Commentaries * 129–32. Chief Justice Marshall, in *Ex parte Bollman,* 8 U.S. (4 Cranch) 75, 97–98, 2 L.Ed. 554 (1807), inferred that the Judiciary Act of 1789 did not comprehend the granting of this form of the habeas writ. The reason, Marshall explained, was that the Act prescribed an alternate mode for bringing into federal courts suits brought in state courts against a person having a right to claim the jurisdiction of the courts of the Unit-

ed States: the defendant might, in his first appearance, file a petition and have the case removed to the federal forum.

18. *See Lehman v. Lycoming County Children's Servs. Agency,* 648 F.2d 135 at 149 n.14 (3d Cir. 1981) (in banc) (Adams, J., concurring) ("Because state courts are not inferior courts ... many uses to which ... process writs were put at common law are inconceivable within the federal system.").

19. *See Russell v. Knight,* 488 F.2d 96, 97 (5th Cir. 1973) (per curiam); *Moye v. Clerk, DeKalb County Superior Court,* 474 F.2d 1275, 1276 (5th Cir. 1973); *Clark v. State of Washington,* 366 F.2d 678 (9th Cir. 1966); *cf. Smith v. Bourbon County,* 127 U.S. 105, 112, 8 S.Ct. 1043, 1046, 32 L.Ed. 73 (1888) (federal courts without power to issue mandamus to direct state officers in performance of their duties).

20. *See, e. g., Superior Court v. United States District Court,* 256 F.2d 844, 847 (9th Cir. 1958) (federal court cannot issue writ of certiorari to state court to compel the latter to produce its record); *cf. Stewart v. Johnston,* 97 F.2d 548 (9th Cir. 1938), *cert. denied,* 312 U.S. 677, 61 S.Ct. 447, 85 L.Ed. 1117 (1941) (district court has no jurisdiction to issue writ of certiorari to another district court, inasmuch as the two tribunals have coordinate jurisdiction).

21. 28 U.S.C. § 2283. The Act provides:
    A court of the United States may not grant an injunction to stay proceedings in a state

generally forbidding injunctions to stay proceedings in a state court, excepts those injunctions which are necessary in aid of a federal court's jurisdiction or required to effectuate its judgments.[22]

Refinement of the "comity" notions which Judge Wright invokes, and which inform the principles mentioned above, is provided in the line of cases emanating from *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), one of which, *Juidice v. Vail*, Judge Wright cites as supporting his position. In *Juidice*, the Supreme Court held that a federal court must refrain from adjudicating constitutional or federal law issues brought to it by a plaintiff who has an opportunity to pursue those claims in an ongoing state proceeding.[23] Like the Anti-Injunction Act, and the prohibition on writs of mandamus and certiorari, *Juidice* fundamentally rests on a principle of nonintervention: except in carefully circumscribed situations, the federal courts should not disrupt an ongoing state judicial process, either by preempting the adjudication of claims that could be brought to the state forum, by directing the state court to stay its proceedings, or by directly interfering in other ways with the natural course of state adjudication.

This principle, which is at the heart of "comity," is inapplicable to the instant case. The order in issue here does not disrupt state proceedings by foreclosing state court adjudication of an issue that could be resolved there. To the contrary, although Neagle is a state court defendant, he was required to present his Rule 6(e) motion for disclosure to the district court, because that court is the guardian of the grand jury materials. Judge Wright, moreover, does not contest this, nor does he maintain that the motion, once initiated in federal court, should have been transferred to the state court for resolution. His position, rather, is that he should have no part in the decision whether to disclose the materials. This case simply does not present an issue that could have been litigated in an ongoing state proceeding, and the "comity" concerns of *Younger, Juidice*, and the Anti-Injunction Act—that federal preemption of claims that may be adjudicated in ongoing state court proceedings should be forestalled—do not apply.

### IV.

We conclude that this appeal is properly before us, inasmuch as the prerequisites of an appealable order, standing, and district court in personam jurisdiction have been satisfied. On the merits, we find that the district court had the power to direct the state court judge to confer with the United States Attorney, and that the procedure the court devised was within its discretion under Rule 6(e). Accordingly, the judgment of the district court will be affirmed.

---

court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The Supreme Court has interpreted § 2283 as a derivative of the principle that "we have . . . in this country two essentially separate legal systems." *Atlantic C.L.R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 286, 90 S.Ct. 1739, 1742, 26 L.Ed.2d 234 (1970); for a dissenting view, see Comment, *Federal Court Stays of State Court Proceedings: A Re-examination of Original Congressional Intent*, 38 U.Chi.L.Rev. 612 (1971) (when Congress originally enacted the Anti-Injunction Act in 1793, it did not intend to prevent stays effected by writs other than injunction).

**22.** We do not regard the district court's order as an injunction to stay state court proceedings.

**23.** The specific issue in *Juidice v. Vail* was whether a federal court could entertain a constitutional challenge to New York's procedures leading to imprisonment for contempt of court, brought by plaintiffs engaged in ongoing contempt proceedings in state court. The Court held that plaintiffs, who had an opportunity to present their federal claims in the state proceeding, were for that reason barred from litigating the claim in federal court. 430 U.S. at 337, 97 S.Ct. at 1218.