### SECURITIES INVESTOR PROTECTION CORPORATION, Applicant,

**Ralph M. Clark, as Trustee for the Liquidation of Institutional Securities of Colorado, Inc., Plaintiff–Appellee,**

v.

**Abraham B. GOLDBERG, et al., Defendants,**

**Margo Goldberg, Defendant–Appellant.**

No. 87–1198.

United States Court of Appeals, Tenth Circuit.

Jan. 2, 1990.

Bruce McMillen, Saguache, Colo., for defendant-appellant.

William D. Scheid of Scheid and Horlbeck, Denver, Colo., for plaintiff-appellee.

Before LOGAN, ANDERSON and BRORBY, Circuit Judges.

LOGAN, Circuit Judge.

This is an appeal from a district court ruling that Margo Goldberg has no claim to corporate stock in Pro Scan Inc. and in Robert Halmi, Inc. acquired by her husband during their marriage.[1] We affirm the district court's determination that Mrs. Goldberg has waived and is now estopped from claiming any rights to the property.[2]

Margo and Abraham Goldberg were married in 1969, which marriage continued until Mrs. Goldberg filed for divorce on June 4, 1981. In 1977, Mr. Goldberg pleaded guilty to a series of securities fraud charges leveled against him by the Securities and Exchange Commission for acts he committed during 1975–76, during his tenure as Vice President of Institutional Securities of Colorado, Inc. (ISOC), a broker-dealer. Ralph M. Clark, a trustee in liquidation (the Trustee), was appointed to represent the interest of ISOC customers pur-

---

1. Mrs. Goldberg also complains that the district court did not resolve issues of her ownership rights in a condominium in Vail and an option in stock of American Genetics Inc, which she says are dependent upon the outcome of Pro Scan and Halmi issues. In reviewing the record, we note that there is no discussion of these items in the district court's order. The order does state that the bankruptcy judge, as special master, held Mrs. Goldberg had no interest "in any of the assets" held by the Trustee. II R. tab 46 at 1. And the court's order contained the following statement: "It is this Court's understanding that the only dispute between the parties has been the [Pro Scan and Halmi] stock proceeds, and that they are able to resolve the interests of Margo Goldberg in other assets which have come into the control of the trustee." Id. at 6. Thus, the district court's order appears to be a final disposition of all issues before it. We are given no information or arguments that enable us to consider rights in a Vail condominium or a stock option in American Genetics; therefore, we express no opinion on those matters.

2. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

suant to the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* The Trustee eventually obtained large judgments against Mr. Goldberg. From 1978 to 1981, the Trustee set about locating and levying upon Mr. Goldberg's assets to satisfy the debt. During this period, Mr. Goldberg continued to work in various business endeavors, during which he acquired the stock at issue in this proceeding. Both parties appear to agree that these stocks are separate from and not proceeds of the fraud perpetrated on ISOC customers.

On November 17, 1981, after Mrs. Goldberg had filed an action to dissolve the marriage, the state court having jurisdiction of the case granted Mrs. Goldberg's *ex parte* motion for a temporary restraining order (TRO) prohibiting either spouse from disposing of property until rights to such property were established. The TRO specifically prohibited transfer of the Pro Scan stock.

If he did not know earlier of Mrs. Goldberg's dissolution action and of the TRO, the Trustee became aware of them when he attempted to levy on 2,000,000 shares of Pro Scan stock stock transfer agents held for Mr. Goldberg. Consequently, the Trustee filed an application in federal district court for an order requiring Mrs. Goldberg to amend the TRO so that he could levy on the Pro Scan stock. The Trustee served a copy of the application on the lawyer handling Mrs. Goldberg's divorce.

On December 10, 1981, the federal district court held a hearing on the application. There is some conflict over whether Mrs. Goldberg attended the hearing. Mrs. Goldberg avers that she did not, but the hearing transcript indicates that her attorney, Kevin Shine, was appearing "with Mrs. Goldberg." II R. tab 39, Ex. H at 2. Following off-the-record discussion, Mrs. Goldberg, through her attorney, agreed to seek a modification of the TRO in state court. There is little discussion on record concerning this agreement, except for Attorney Shine's stated concern that any excess funds, following sale of the stock, be turned over to the state court for distribu-

tion. *Id.* Mrs. Goldberg's failure to object to or appeal from the federal court's order, and her subsequent request to the state court to incorporate into the TRO by reference the entirety of the federal court order, satisfy us that the district court order embodied the agreement reached between the Trustee and Mrs. Goldberg.

In July 1982, the Trustee attempted to levy on 100,000 shares of stock in Robert Halmi, Inc., then in the possession of J. Daniel Bell & Co. Inc. The garnishee resisted garnishment because of the outstanding TRO prohibiting transfer of Goldberg property. Alleging agreement of Mrs. Goldberg, the Trustee applied for an order in federal district court directing Bell to turn over the Halmi stock. The application specifically requested "[t]hat the securities should be sold and the proceeds therefrom applied in partial reduction of the Trustee's Judgment." I R. tab 17 at 3. The district court entered an order directing Bell to turn over the stock upon receipt of notice that the Goldberg TRO had been modified. That order incorporated the "partial reduction" language quoted above. I R. tab 18 at 2. Mrs. Goldberg petitioned the Colorado state court to modify the TRO "in accordance with the Order of the United States District Court." II R. tab 39 Ex. N at 1. An order modifying the TRO was so entered. *Id.* Ex. O. Mrs. Goldberg made no timely objection to the language of the application, order or modification.

On December 5, 1983, the Trustee filed a proposed distribution order in the district court which would distribute to ISOC customers, *inter alia*, the full value of the Halmi and Pro Scan stock. Mrs. Goldberg filed an objection to the distribution order asserting a claim for one-half of the value of these blocks of stock as part of her portion of the marital estate, in accord with her interpretation of the state court's order dividing the marital property. The Trustee contends that, regardless of its status as marital property, Mrs. Goldberg's past actions with regard to the stock constituted a waiver of her interest and that she is estopped from asserting a property interest in the stock at this late date.

██ It is our view that Mrs. Goldberg, at the time of the hearing on the order to show cause, was in the position of a third party claiming ownership of property being garnished to satisfy the debts of another. By obtaining the TRO, Mrs. Goldberg was assured of notice in the event of a garnishment of property held in her husband's name. While in a slightly different form, the order to show cause, and her appearance at the hearing, are analogous to an intervention by a third party claimant to the garnished property. Mrs. Goldberg had notice of the garnishment and appeared (in person and/or through her attorney) in court with the opportunity to contest it. Under Colorado law, a third party claimant must contest the garnishment of the property at the time set for a response or within sixty days following the issuance of a summons, or be "thereafter barred." Colo.R.Civ.P. 103 (i) (subsequently amended and renumbered at Colo.R.Civ.P. 103(11)(b)). Mrs. Goldberg's failure to assert her claim at the December 10, 1981 hearing resulted in a conclusive determination that the property was properly garnished. *Id. Cf. Hartner v. Davis*, 100 Colo. 464, 68 P.2d 456, 457 (1937) (third party claimant in attachment must file intervention proceedings within statutory period of thirty days after levy; fact that intervention occurred before final judgment and distribution of sale proceeds not sufficient). Such a determination must be given claim preclusive effect by this court.

██ We are unpersuaded by Mrs. Goldberg's argument that she had no quarrel with the garnishment itself, only the proposed distribution of the proceeds. Absent some agreement to the contrary, once a third party claimant has conceded that the disputed property may be garnished by a creditor, she is estopped from thereafter claiming the proceeds of the garnishment. *See Hartner*, 68 P.2d at 457; *accord Dodder v. Moberly*, 28 Okl. 334, 114 P. 714, 716 (1911). There is no evidence of any such agreement in this case.

Mrs. Goldberg also argues that the results of the December 10, 1981 hearing should be set aside by this court because (1) the district court had no jurisdiction over her, and (2) she had no notice that her property rights were to be conclusively determined at that time. These arguments are equally unpersuasive.

██ First, we note that the district court had exclusive jurisdiction over the *res* subject to garnishment. 15 U.S.C. § 78eee(b)(2)(A). Such jurisdiction is sufficient to allow the court to resolve competing claims over ownership even absent personal jurisdiction over the parties. R. Casad, *Jurisdiction in Civil Actions* ¶ 1.01[3] (1983). Second, we note that Mrs. Goldberg voluntarily appeared and/or was represented by counsel at the hearing. She has waived, therefore, any objection to personal jurisdiction that she otherwise might have asserted under Fed.R.Civ.P. 12(b). Fed.R.Civ.P. 12(h); *In re Grand Jury Proceedings*, 654 F.2d 268, 271 (3d Cir.1981); *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 701 (6th Cir.1978). *See also* Casad at ¶¶ 3.01[5][b], 6.02.

Regarding the contention that Mrs. Goldberg lacked notice that her property rights were to be determined, we observe the following: Mrs. Goldberg obtained an *ex parte* TRO to protect the marital estate from dissipation during the divorce proceedings; the Trustee asked for a modification of the TRO in order to sell property that was *specifically* subject to the restraining order; and Mrs. Goldberg agreed to modify the order and release the property without entering any agreement with the Trustee regarding the protection of her interest in the property. Given that the stated justification for the *ex parte* TRO was the irreparable harm that would result to Mrs. Goldberg's rights if the property were transferred, we are unable to comprehend in what way Mrs. Goldberg lacked notice that her property rights were at stake in the hearing. Moreover, Mrs. Goldberg, without objection, petitioned the state court to incorporate into the TRO the entirety of the district court order, which specifically limited her interest in the garnished property to "*any excess shares or cash remaining in the Trustee's possession after full satisfaction of the Trust-*

*ee's said judgment.*" II R. tab 39, Ex. I at 3, and Ex. J (emphasis added). We, therefore, hold that the Pro Scan stock was properly garnished by the Trustee and its full value is subject to distribution to the customers of ISOC.

Mrs. Goldberg's objections to the distribution of the proceeds of the Halmi stock are equally without merit. While there was no specific hearing and order on the issue, Mrs. Goldberg, by agreement, requested a similar modification of her TRO allowing the Trustee to take possession of the Halmi stock. For the same reasons discussed above, we hold that she is barred by principles of claim preclusion from now asserting a claim to the proceeds arising from sale of the Halmi stock.

Accordingly, the decision of the district court is AFFIRMED.