## In re GRAND JURY PROCEEDINGS.

**Appeal of Robert A. WRIGHT, Judge of the Court of Common Pleas of Delaware County, Pennsylvania, 32nd Judicial District.**

### No. 79–2805.

United States Court of Appeals, Third Circuit.

Argued May 23, 1980.

Decided July 8, 1980.

Gibbons, Circuit Judge, dissented and filed opinion.

---

Howland W. Abramson (argued), Philadelphia, Pa., for appellant.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Div., Robert L. Hickok, Asst. U. S. Atty. (argued), Philadelphia, Pa., for appellee U. S.

Carmen P. Belefonte (argued), Kassab, Cherry, Curran & Archbold, Media, Pa., for appellee George Neagle.

Before SEITZ, Chief Judge, and GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

### PER CURIAM.

Robert A. Wright, a state trial judge, appeals from an order of a federal district judge establishing procedures for disclosure of federal grand jury materials to George Neagle, a defendant in a state criminal trial before the appellant.

### I.

During 1979, a federal grand jury in the Eastern District of Pennsylvania was investigating Leonard R. Milano for various criminal activities. After the grand jury investigation had begun, Milano was shot and wounded along with Thomas Manley. Manley died as a result of the wounds, but Milano survived.

Thereafter, George Neagle was charged by the Commonwealth of Pennsylvania with several offenses arising out of the shooting incident involving Milano and Manley. His case was scheduled on the appellant's docket. Because it appeared that Milano would be a witness at Neagle's state trial, Neagle made a motion in federal district court for disclosure of certain information the grand jury had on Milano. The motion was served on the state prosecutor and the United States Attorney. It was not served on appellant.

The district court entered an order directing the United States Attorney to compile all grand jury material pertinent to Neagle's request. The United States Attorney was then directed to transport the information to the appellant's chambers and to consult with him about what evidence would constitute *Brady* material. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The United States Attorney was to get a recommendation from the appellant as to disclosure and then communicate that recommendation to the district court. At that time, the district court would determine whether Fed.R.Crim.P. 6(e) permitted disclosure. The district court reasoned that this procedure was necessary because it was unfamiliar with the facts surrounding the state proceeding.

Although the appellant was not a party in the district court, he has taken this appeal to challenge the procedure employed by the district court. The appellees are the United States Attorney and Neagle. The state prosecutor is not an appellee.

### II.

At the outset, although the parties have not considered the issue, we must determine whether the appellant has standing to appeal the procedures set out in the order. To decide this question, an understanding of

exactly what the district court's order contemplated vis-a-vis the appellant is necessary.

The crucial portions of the order provide:

2. After the United States Attorney has reviewed the evidence . . . , he shall transport all of the evidence pertaining to the requests . . . to the chambers of [the appellant], and shall meet with the State Judge at the State Judge's earliest convenience.

3. The United States Attorney shall consult with the State Judge about the contents of the evidence and shall communicate his views to the State Judge as to what evidence may constitute *Brady* material, so that the State Judge may make a fully informed determination of what material ought to be produced under *Brady*, given the facts and circumstances of the case before him.

4. . . . Although this Court has no knowledge of the proceedings in state court, it will be available at any time to consult directly with the State Judge if the State Judge deems it helpful.

5. Pursuant to [Fed.R.Crim.P.] 6(e)(3)(C), the Court, with the utmost deference, is constrained to Order the State Judge not to divulge to any person the contents of any evidence shown to him unless and until this Court so authorizes, nor to docket this Order in the Court of Common Pleas unless [Neagle's] application to this Court is already a matter of record in that proceeding.

 In another context, the United States Attorney and Neagle argue that the order is not binding on the appellant until he decides to participate in the procedure specified in the order. In effect, this reading of the order, which the appellant conceded at oral argument was a reasonable one, means that unless the appellant actually reviews the material and confers with the United States Attorney, he is not bound by the order. We agree for several reasons.

First, by its terms the order is directed to the United States Attorney, not the appellant. Nowhere does the order expressly command the appellant to take any positive action with respect to the information. The paragraph dealing with secrecy seems to contemplate that appellant may not divulge any grand jury information only if he chooses to confer with the United States Attorney. Second, we have read the opinion of the district court that accompanied the order, and we find no hint that the appellant would be held in contempt for deciding not to examine the information or confer with the United States Attorney.

Finally, given the serious intrusion into state criminal proceedings that would result if we read the order to compel the appellant to examine the evidence and confer with the United States Attorney, we are reluctant to conclude that the district court intended to bind a state judge in such a manner without some clear, manifest indication that this was the import of the order. As the quoted language demonstrates, such is not the case here. Thus while the issue is not entirely free from doubt, we conclude that the order in question does not require the appellant to inspect the information or to confer with the United States Attorney.

 Seen in this light, the form of the order resolves the standing issue.[1] Whatever else may be required, one fundamental prerequisite of standing for purposes of article III is that there be "actual or threatened injury as a result of the putatively illegal action [in question]." *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). The reason the test includes "threatened injury" is that a person should not have to wait for actual injury to satisfy the dictates of article III. If there is a sufficiently imminent threat of harm, that is enough to satisfy the case or controversy requirement.

The reverse of this proposition is that if there is no real probability the alleged inju-

---

1. Both Neagle and the United States Attorney consider the form of the order as having relevance to whether the district court had power to do what it did. Neither, however, discussed the relevance of the form of the order to standing, which we believe is its primary significance in this appeal.

ry will ever occur, the concreteness that article III demands is absent. Obviously, in all such cases the probability of the injury's occurrence is a matter of degree, which means that most cases stand on their facts and general principles are hard to derive. Here, whether the injury will ever occur depends solely on the appellant's decision whether to confer with the United States Attorney. The order imposes an obligation on him only if he decides to confer. Moreover, there is no indication in the record one way or the other about what action the appellant intends to take in this regard. The very fact that he does not want to involve himself, as is shown by this appeal, would seem to indicate that when the time comes, he will in fact not involve himself.

Thus the appellant can easily avoid any injury by deciding not to confer. Such conduct is not barred by the order and carries no danger of contempt. We note that this is true especially because of the nature of the injury to appellant. The only possible injury of which the appellant complains is his involvement in the procedure in question. Because the appellant can avoid those procedures without any harm, there is no imminent threat of injury to any interest of the appellant.

We realize that by holding that appellant has no standing due to the form of the order, we have reached the merits of the appeal to the extent of construing the order. As we have noted before, however, resolution of standing often involves the merits in one way or the other. *See Rosen v. Public Service Electric & Gas Co.*, 477 F.2d 90, 94 (3d Cir. 1973) ("The substantive issues must be considered to ascertain whether 'there is a logical nexus between the status asserted and the claim sought to be adjudicated.'" (quoting *Flast v. Cohen*, 392 U.S. 83, 102, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968)).

Nevertheless, the question of what procedure the order in fact required and the question of whether those procedures are legally permissible are analytically distinct. Because our ruling rests solely on the fact that the order does not injure the appellant,

we express no view on the propriety of the procedures employed. Moreover, this does not leave Neagle without review. If the appellant decides not to confer, we assume the district court will reconsider Neagle's motion and enter an appropriate order.

Accordingly, we conclude that because appellant need not examine any of the information nor confer with the United States Attorney, he is in no danger of injury and thus has no standing.

### III.

The appeal will be dismissed.

Each party to bear its own costs.

GIBBONS, Circuit Judge, dissenting.

I dissent from the judgment dismissing this appeal. I would reach the merits, and affirm.

George Neagle is charged by the Commonwealth of Pennsylvania with murder and other serious offenses. In that prosecution the Commonwealth is bound, by virtue of the sixth amendment, to afford Neagle compulsory process for the production of evidence relevant to his defense. *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). The Commonwealth's principal witness in the prosecution is expected to be Leonard R. Milano, Jr., who is the subject of an ongoing federal grand jury investigation in the Eastern District of Pennsylvania, being conducted by the United States Attorney in that district. Neagle requested the state court to issue an order compelling production of materials that may be exculpatory, including those materials relating to Milano, in the possession of the United States Attorney as a result of the grand jury investigation. Obviously, since the United States Attorney is located in the territory of the Commonwealth of Pennsylvania, he could have been served with the compulsory process of the Pennsylvania courts. Had Judge Wright elected to proceed in that manner, the United States Attorney, looking at Fed.R. Crim.P. 6(e), would have seen that disclosure by him of matters occurring before a

federal grand jury could be made "when so directed by the court preliminary to or in connection with a judicial proceeding." His further inquiry would have disclosed that the judicial proceedings for which disclosure may be made on court order include judicial proceedings in state courts. *E. g., Special February 1971 Grand Jury v. Conlisk,* 490 F.2d 894 (7th Cir. 1973); *Doe v. Rosenberry,* 255 F.2d 118 (2d Cir. 1958); *United States v. Goldman,* 439 F.Supp. 337 (S.D.N.Y. 1977); *United States v. Salanitro,* 437 F.Supp. 240 (D.Neb.1977). At that point the United States Attorney would have been faced with the question which the district court considered, and which the majority avoids; namely, what court shall make the determination of particularized need for disclosure of the federal grand jury materials in the state court proceeding. He might well have concluded that Rule 6(e) authorizes a state court judge to make that determination, since by virtue of the supremacy clause of the Constitution that judge would be obliged to apply the same federal law standards of disclosure as would a district court judge. No case construing Rule 6(e) definitively precludes that result, although in the cases establishing that the judicial proceeding exception to federal grand jury secrecy includes state judicial proceedings, the disclosure decision was made by a federal court. *See, e. g., Special February 1971 Grand Jury v. Conlisk,* 490 F.2d 894; *Doe v. Rosenberry,* 255 F.2d 118; *United States v. Goldman,* 439 F.Supp. 337; *United States v. Salanitro,* 437 F.Supp. 240. In the likely event that the United States Attorney was uncertain about where the disclosure decision should be made, he would have had the option of resisting the state court process, inviting an enforcement proceeding, and removing that proceeding to a federal district court pursuant to 28 U.S.C. § 1442 (1976). That course would have tendered to the district court the very issue which in this case it decided; which tribunal should make the disclosure determination.

I have outlined the scenario which would have resulted from a decision by Judge Wright to issue state court process because I believe that the majority decision now makes it inevitable. By construing the district court order as if it had no impact on the state court judge, this court has deprived him of a definitive ruling on the question of who should make the disclosure ruling. At the same time he must recognize that because of the holding in *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019, he cannot simply ignore grand jury materials possibly relevant to the defense. Since he has indicated by this appeal his dissatisfaction with the method devised by the district court for screening those materials, and has been told by the majority that he is not bound by the district court order, the next step is plain. Neagle will renew his request for compulsory process and Judge Wright will issue it. The United States Attorney, however, this time will have no option to consider whether Rule 6(e) contemplates that a state court may make the disclosure determination. He is bound by the district court order even though the state court judge is not. Thus he will almost certainly file a removal petition, and the underlying question will reappear first in the district court, then here on appeal. The passage of time will have contributed nothing to its resolution. The inevitable delay of the state court murder trial will, however, have contributed to disharmonious relations between two court systems, both of which are bound by the compulsory process clause of the sixth amendment.

The majority holds that Judge Wright lacks standing to appeal. I disagree. The general rule is that an appellant must be privy to the record and aggrieved by the order from which he appeals. 9 Moore's Federal Practice ¶ 203.06 (2d ed. 1980); 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3902 (1976). However, the privy to the record requirement is not absolute. Nonparties have been allowed to appeal orders denying intervention, *Commonwealth of Pennsylvania v. Rizzo,* 530 F.2d 501 (3d Cir.), *cert. denied,* 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976), orders denying claims of privilege,

*Overby v. United States Fidelity and Guaranty Co.*, 224 F.2d 158 (5th Cir. 1955), orders directed to them, *Commercial Security Bank v. Walker Bank & Trust Co.*, 456 F.2d 1352 (10th Cir. 1972), and orders which, though not directed to them, substantially affect their interests. *Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); *Dietrich Corp. v. King Resources Co.*, 590 F.2d 422 (10th Cir. 1979).

Had Judge Wright been unconditionally ordered to perform, or not to perform, an act, he would clearly have possessed standing to appeal. *Commercial Security Bank v. Walker Bank & Trust Co.*, 456 F.2d 1352. I do not understand the majority to suggest otherwise. Its holding that Judge Wright's appeal fails to satisfy the case or controversy requirement depends entirely upon the form of order, which, as construed by the majority, is conditional. I strongly suspect that the majority's construction of that order will be a surprise to the judge who drew it. But be that as it may, even construing the order as permitting Judge Wright an option to comply, in truth he has no option at all. He is bound by the holdings in *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019, and *Brady v. Maryland*, 374 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He must take steps to obtain the grand jury materials either by complying with the order or by issuing his own process against the United States Attorney. The suggestion that he is so unaffected by the order that his objections cannot satisfy Article III case or controversy requirements is unsound. And if any prudential standing considerations are at work, they escape my attention. Prudence dictates that the issue presented by this appeal be resolved now, not in the next round of litigation.

A far more sensible approach to standing to appeal was taken by the court in *Glen W. Turner Enterprises Litigation*, 521 F.2d 775 (3d Cir. 1975). There the trial court restrained prosecution by class members of independent state and federal actions pending disposition of a federal class action. The Kentucky Attorney General appealed the restraining order. This court noted that the restraint against prosecution was not absolute, since "a party need only exclude himself from the class actions to be free of the restraint." 521 F.2d at 778. We held, nevertheless, that "[s]ince the Attorney General cannot exclude Kentucky citizens from the federal class action, the January 15 order effectively prohibits him from executing upon his state court judgment" and, therefore, he could appeal. 521 F.2d at 779. Judge Wright's future course of action is determined as effectively by the order appealed from here as was the future course of action of the Kentucky Attorney General in *Glen W. Turner.*

Recognizing that compulsory process for federal grand jury materials presented delicate issues of federal-state relations, and that a state enforcement proceeding would probably be removed, Judge Wright attempted to have those issues resolved promptly in a federal forum. The majority's unwillingness to decide them is a grave disservice to a cooperative state court judge, and to harmonious federal-state relations.

On the merits, I would affirm the district court's order. In essence it requires that the disclosure decision be made in a federal forum. I am not ready to hold that Rule 6(e) requires that ruling in every instance in which federal grand jury materials are sought for state court proceedings. But where disclosure has been ordered for such proceedings in the past, a federal court has made the Rule 6(e)(3)(C)(i) determination. It is a less convenient method for state court judges trying criminal cases than allowing them to make disclosure decisions as the trial progresses. However, requiring it here was not, in my view, an abuse of the district court's discretion. *Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. at 223, 99 S.Ct., at 1675; *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399, 79 S.Ct. 1237, 1240, 3 L.Ed.2d 1322 (1959). The defendant Neagle will get what *Washington v. Texas* and *Brady v. Maryland* require, countervailing Rule 6(e) policies will be given due consideration, and the impact on the state trial will not be overwhelming.