The BELL TELEPHONE COMPANY
OF PENNSYLVANIA

v.

The REUBEN H. DONNELLEY CORPO-
RATION and Donnelley Directory.

The REUBEN H. DONNELLEY
CORPORATION

v.

The BELL TELEPHONE COMPANY
OF PENNSYLVANIA.

Civ. A. Nos. 85–4098, 85–6919.

United States District Court,
E.D. Pennsylvania.

June 17, 1986.

K. Robert Conrad, Howard M. Klein, Conrad & O'Brien, P.C., Philadelphia, Pa., for Bell Telephone Co. of Pa.

David L. Foster, Francis J. Menton, Theodore C. Whitehouse, Willkie, Farr & Gallagher, New York City, Ralph W. Brenner, Francis P. Newell, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., Edward J. Riehl, Rod J. Pera, William M. Young, Jr., McNees, Wallace & Nurick, Harrisburg, Pa., for Reuben H. Donnelley Corp.

### OPINION

LUONGO, Chief Judge.

The Donnelley Directory ("Donnelley") has been the exclusive sales representative for the Yellow Pages directories of The Bell Telephone Company of Pennsylvania

("Bell") since 1931. By letter dated June 28, 1985, Bell informed Donnelley that it was terminating their relationship effective June 30, 1986. As might be expected, the one year termination notice period has given rise to many problems as each side, understandably, has attempted to gain or maintain a competitive advantage over the other. For example, almost immediately after receiving Bell's notice of termination, Donnelley sent a letter to Pennsylvania Yellow Pages advertisers announcing its intent to publish its own Pennsylvania directories after June 30, 1986. Bell responded to Donnelley's letter by filing suit for, *inter alia,* injunctive relief, contending that Donnelley's actions constituted a breach of Donnelley's contractual and common-law duties to Bell.

## I. *Background*

The Bell Telephone Company of Pennsylvania is a Pennsylvania corporation with its principal place of business in the Commonwealth of Pennsylvania. The Donnelley Directory is an unincorporated division of the Reuben H. Donnelley Corporation, which is a Delaware corporation with its principal place of business in the State of New York. The Reuben H. Donnelley Corporation and Donnelley Directory do business in the Commonwealth of Pennsylvania.

Donnelley has served as Bell's representative with the exclusive right to sell advertising in Bell's Yellow Pages directories to businesses in Pennsylvania since 1931. The current contract embodying this relationship ("Sales Agreement") was entered into on September 24, 1981, and became effective on January 1, 1982. Article XVIII of the Sales Agreement allowed either party to terminate the agreement, upon one year's written notice, effective any time after January 1, 1985.

In its letter of June 28, 1985, Bell notified Donnelley that it was exercising its right to terminate the Sales Agreement effective June 30, 1986. On July 2, 1985, Donnelley sent a letter to Pennsylvania Bell Yellow Pages advertisers informing them of Donnelley's plans to publish its own Pennsylvania directories upon termination of the Sales Agreement.

After learning of the distribution of Donnelley's letter, Bell filed a complaint in this court, alleging that Donnelley's actions constituted a breach of its contractual and common-law obligations to Bell and requesting equitable relief, including a motion for a temporary restraining order and a preliminary injunction. I entered a temporary restraining order on July 16, 1985, enjoining Donnelley from further disseminating the July 2, 1985 letter, from communicating with Bell's present or potential advertisers with respect to Donnelley's plans to market its own directory, or soliciting any of Bell's present or potential advertisers on behalf of Donnelley. The order also required Donnelley to provide Bell with certain information concerning the response generated by the July 2nd letter and to respond to all subsequent inquiries about Donnelley's plans for its proprietary directories with a prepared message. Before the preliminary injunction hearing was held, the parties negotiated a consent decree which set forth Donnelley's obligations to Bell for the remainder of their contractual relationship with respect to promotion of and solicitation for Donnelley proprietary directories.

In November of 1985, Bell began distributing a Yellow Pages newsletter to its Pennsylvania advertisers. Donnelley thereupon filed a complaint in this court requesting equitable relief, alleging that the newsletter indirectly disparaged Donnelley and harmed its business reputation with its advertisers and that Bell's distribution of the newsletter constituted a breach of Bell's contractual and common-law duties to Donnelley. Donnelley's motion for a preliminary injunction was denied.

After Donnelley informed Bell of its plans to solicit advertisers on its own behalf after July 1, 1986, the parties unsuccessfully attempted to work out a mutually agreeable proposal. On April 9, 1986, Bell filed an amended complaint in which it requested declaratory, injunctive and monetary relief, alleging that Donnelley's pro-

posed solicitation of advertisers for Donnelley proprietary directories, commencing on or soon after July 1, 1986, will violate the consent decree.

Before me now is Bell's motion to enforce the consent decree. Bell seeks an order enjoining Donnelley from implementing its planned solicitation.

## II. *The Present Dispute*

The current controversy concerns the scope of the limitations imposed by the consent decree on Donnelley's solicitation activities on its own behalf after July 1, 1986. Donnelley has announced that it plans to begin soliciting advertisers on or shortly after July 1, 1986, for Donnelley proprietary directories to be distributed in various parts of Pennsylvania. One of these directories will be distributed throughout the City of Philadelphia. The primary objective of Bell's motion is to preclude Donnelley from commencing its planned solicitation of advertisers on its own behalf in the City of Philadelphia on July 1, 1986.[1]

Advertising in directories is sold by means of campaigns called canvasses. A sales canvass for a particular Bell directory consists of Donnelley's solicitation of local advertising for that particular directory. The parties have identified canvasses for 31 directories ("transition directories") which will be in progress on July 1, 1986. A directory was listed as a transition directory if the service order close date for the canvass of that directory fell after July 1, 1986. The service order close date is the date after which Donnelley will not accept new advertisements, insertions, changes and cancellations for a particular directory. Under the terms of the Sales Agreement and the consent decree, Donnelley's obli-

gations to Bell continue after July 1, 1986 with respect to the transition canvasses.

Bell contends that the consent decree prohibits Donnelley from soliciting advertisers for Donnelley proprietary directories in the distribution areas of the transition directories and all Bell directory distribution areas which are contiguous to the distribution area of the transition directory until the canvass for the transition directory has concluded. The pertinent provisions of the consent decree read as follows:

1. The defendants [Donnelley] and their affiliates, agents, servants, and employees, are enjoined from

.          .          .          .

(b) initiating without Bell of Pennsylvania's written consent, any written or oral communications with any advertiser or potential advertiser in any Yellow Pages directory published by Bell of Pennsylvania, other than communications in the ordinary course of business.

(c) soliciting advertising, either directly or indirectly, from any area in Pennsylvania served by plaintiff for any classified number services directory to be published by defendants and distributed within any part of Pennsylvania served by plaintiff, and

(d) in its role as Bell of Pennsylvania's sales representative, disparaging Bell of Pennsylvania or Bell of Pennsylvania's directories directly, indirectly or by implication.

.          .          .          .

5. The provisions of this Decree will terminate on July 1, 1986, except with respect to sales canvasses performed by Donnelley on behalf of Bell of Pennsylvania that continue after that date. For

---

1. Approximately $170 million in Donnelley-sold local advertising revenues were published in Bell's Pennsylvania directories in 1985. Of that total, over 47 percent, or over $80 million, was derived from advertisers in the Philadelphia metropolitan area, which consists of the City of Philadelphia and Bucks, Montgomery, Chester and Delaware counties. Approximately 17 percent, or $31 million, was derived from advertisers located within the City of Philadelphia.

These figures include all local advertising purchased by businesses located in the Philadelphia metropolitan area and the City of Philadelphia, respectively, in any of the Bell directories distributed in Philadelphia.

Only local advertising is covered under the terms of the Sales Agreement. Local advertising in the Yellow Pages is advertising in a limited number of directories placed by businesses in Pennsylvania.

these canvasses, this Decree will terminate upon their conclusion, but in no event later than November 1, 1986.

Bell argues that the term "potential advertiser" in paragraph 1(b) of the decree applies to any business located in the distribution area of the transition directory in canvass or any contiguous Bell directory distribution area. Bell reasons that since soliciting any business located in the area described above for a Donnelley directory could not be considered a communication "in the ordinary course of business," any solicitation by Donnelley on its own behalf which takes place within this defined area prior to the completion of the transition canvasses will violate the consent decree. Under this interpretation, Donnelley would be precluded from soliciting advertisers on its own behalf in the City of Philadelphia until after October 15, 1986, the service order close date of the Eastern Montgomery County canvass, since the City of Philadelphia is a Bell Yellow Pages directory distribution area which is contiguous to the distribution area of the Bell Eastern Montgomery County directory.[2]

Edgar Simmons, Bell's district manager for directory sales operations and customer service, testified that the concept of contiguous areas is contained in Article III(f) of the Sales Agreement, which requires Donnelley to use its best efforts to sell advertising to all reasonable prospects. He also stated that 95 percent of all businesses that advertise in Bell directories are located in the distribution area of the directory or a contiguous Bell directory distribution area. On cross-examination, however, Simmons conceded that there had been no discussion of the concept of contiguous areas during the negotiations which culminated in the consent decree. The word "contiguous" does not appear anywhere in the consent decree or the Sales Agreement.

Five of the transition directories are Philadelphia community directories. These directories are distributed in particular neighborhoods within the City of Philadelphia. Bell argues that because Donnelley's planned city-wide solicitation of Philadelphia will take place within the distribution areas of these directories, it will violate the consent decree, wholly aside from the contiguous area concept.

Donnelley contends that its proposed solicitation activities on its own behalf during the transition period are consistent with its obligations under the consent decree. It asserts that the restrictions imposed by the consent decree apply to canvasses for particular directories, not to particular areas. Donnelley reasons that because its proposed solicitation will not interfere with any of the transition canvasses as they have been conducted in the past, it will not violate the consent decree.

A directory contains advertising primarily directed toward, and is primarily distributed in, a discrete geographic area, known as the distribution area for the directory. Advertisers often seek to reach customers living in directory areas different from and in addition to the one in which they are located. The advertising placed in directories which are distributed in areas outside of the directory area in which the advertiser is located is referred to as "foreign-in" advertising. Donnelley has historically conducted sales canvasses on behalf of Bell in the following manner: During a canvass for a particular directory, all of the business telephone subscribers within that directory's distribution area are solicited for Yellow Pages advertising. This solicitation is for advertising to be placed in the directory serving the area in which the businesses are located as well as for advertising to be placed as foreign-in advertising in any other directory in which the businesses wish to advertise. The only businesses outside of the directory distribution area that are contacted as part of the canvass for that area are businesses which are current advertisers in that directory. For ex-

---

2. In its proposed order, Bell requests that Donnelley be enjoined from solicitation on its own behalf for 30 days after the service order close date of each transition directory, but no later than November 1, 1986. However, for the purposes of the consent decree, a sales canvass only continues until the service order close date.

ample, during the canvass for the Eastern Montgomery County directory, Donnelley will contact all business telephone subscribers in the Eastern Montgomery County directory distribution area for advertisements in the Eastern Montgomery County Yellow Pages and for advertisements in any other Yellow Pages directory in which they wish to advertise. The only foreign-in advertisers that will be contacted during this canvass are those which advertised in the previous edition of the Eastern Montgomery County directory. All other foreign-in advertisers were solicited for the Eastern Montgomery County directory during the canvasses of the directory distribution areas in which they are located.

At the hearing, counsel for Donnelley stated that Donnelley would not solicit, on its own behalf, any business which remained to be contacted after July 1, 1986, as part of any transition canvass until after the service order close date of that canvass. For example, with respect to a transition canvass in which the canvass of the directory distribution area was still in progress as of July 1, 1986, Donnelley would not contact any businesses in the transition directory distribution area or any of the foreign-in advertisers for that directory for a Donnelley proprietary directory.

The parties have stipulated that there will be no city-wide canvass of Philadelphia in progress on July 1, 1986. Donnelley reasons that since the only businesses in Philadelphia which remain to be contacted on behalf of Bell are businesses which advertised in the previous edition of the transition directories, it may solicit in Philadelphia after July 1 as long as it does not contact any of these potential advertisers until after the service order close date for the transition directories for which they are being solicited.

Donnelley also argues that Bell's interpretation of the consent decree is based on the faulty premise that Donnelley's solicitation of the same businesses on behalf of Bell and another principal is inconsistent with Donnelley's obligations to Bell. Donnelley currently solicits advertising for the

directories of ten independent telephone companies in Pennsylvania. The distribution areas of many of these independent telephone company directories are contiguous to the distribution areas of the Bell directories. During the course of the Sales Agreement and prior thereto, Donnelley has solicited advertisers located in Bell directory distribution areas for non-Bell directories. Donnelley reasons that because Bell has acquiesced to Donnelley's practice of soliciting advertisers located in the distribution area of Bell directories for both Bell and non-Bell directories, and entered into the Sales Agreement and consent decree with knowledge of this practice, Bell did not intend for the consent decree to preclude Donnelley's planned solicitation of Philadelphia for a Donnelley proprietary directory after July 1.

The analogy which Donnelley attempts to draw between its solicitations on behalf of the independent telephone companies and its proposed solicitation of Philadelphia is neither accurate nor relevant. Except for a few isolated instances, the distribution areas of the Bell directories and independent telephone company directories have been separate and distinct. Donnelley's proposed Philadelphia directory will be distributed in the same area as Bell directories. Bell has never consented to Donnelley's solicitation of businesses in a Bell directory distribution area for a non-Bell directory that is distributed in the same area as the Bell directory.

Though I do not find Bell's arguments to be without merit, I am not prepared, on the basis of the record before me, to rule that Donnelley is precluded from commencing any activity on its own behalf in the Philadelphia area before November 1, 1986. Due to the hypothetical nature of the present controversy, any discussion of the merits of the case may be premature. I must therefore address the question of whether I have the power to adjudicate the present dispute.

### III. *Justiciability*

The threshold question in every federal case, which determines whether the court

has the power to entertain the suit before it, is whether the plaintiff has made out a "case or controversy" within the meaning of Article III of the Constitution. To satisfy the requirements of Article III, the plaintiff must demonstrate that it has suffered or will suffer a palpable injury due to the challenged conduct of the defendant and that the injury will be redressed by the relief requested. *See, e.g., Duke Power Co. v. Carolina Environmental Study Group*, 438 U.S. 59, 81, 98 S.Ct. 2620, 2634, 57 L.Ed.2d 595 (1978). Recent Supreme Court decisions have articulated the Article III inquiry in terms of standing. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983); *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975).

A plaintiff need not wait for an actual injury to occur in order to present a justiciable case or controversy. *See In re Grand Jury Proceedings*, 625 F.2d 1106, 1108 (3d Cir.1980). Where the plaintiff complains of threatened as opposed to actual harm, the court must determine whether the case is ripe for adjudication, *i.e.*, whether the need for a current adjudication outweighs the possibility of a decision based on an imcomplete factual record or on circumstances which may change. *See Democratic Party of the United States v. National Conservative Political Action Committee*, 578 F.Supp. 797, 807–08 (E.D.Pa.1983), *modified*, 470 U.S. 480, 105 S.Ct. 1459, 84 L.Ed.2d 455 (1985). The doctrines of ripeness and standing are similar; both prevent courts from becoming enmeshed in abstract issues. *See Warth v. Seldin*, 422 U.S. at 499 n. 10, 95 S.Ct. at 2205 n. 10; *Pence v. Andrus*, 586 F.2d 733 (9th Cir. 1978).

Some courts have considered the question of ripeness as a part of the Article III "case or controversy" requirement. *See Spencer v. Honorable Justices of the Su-*preme Court of Pennsylvania, 579 F.Supp. 880, 882 n. 1 (E.D.Pa.1984), *aff'd mem.*, 760 F.2d 261 (3d Cir.1985) (issue of ripeness subsumed in requirement of actual or threatened injury); *Democratic Party of the United States v. National Conservative Political Action Committee*, 578 F.Supp. at 812. Other courts treat ripeness as a combination of the constitutional requirements of Article III and the practical determination of whether the clarity and concreteness of the issues and underlying facts will improve with the passage of time. *See Goldberg v. Rostker*, 509 F.Supp. 586, 591 (E.D.Pa.1980), *rev'd on other grounds*, 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981); *Amico v. New Castle County*, 553 F.Supp. 738, 740–43 (D.Del.1982). Whether stated in terms of standing or ripeness, the operative inquiry is whether the threatened injury is sufficiently describable and certain to permit the court to decide a real controversy as opposed to a set of hypothetical questions.

The parties have stipulated that as of July 1, 1986, or shortly thereafter, Donnelley plans to begin soliciting within the City of Philadelphia for a Donnelley Philadelphia directory which will be distributed in or around Philadelphia. The nature and scope of Donnelley's contemplated conduct, however, is unclear. Donnelley has frequently modified its proposals concerning its course of conduct after July 1, 1986, and has not foreclosed the possibility of further alteration of its plans. Robert Sullivan, assistant to the vice-president and general manager of Donnelley Directory, testified that the most current document concerning Donnelley's activities on its own behalf after July 1 had been written the previous night. Sullivan also testified that he could not say for certain whether Donnelley's position would change between the date of the hearing and July 1.[3]

---

3. Sullivan testified that after July 1, 1986, Donnelley would not be soliciting for a Donnelley directory to be distributed in a transition directory distribution area before the close of that transition canvass. However, paragraph 44 of Donnelley's proposed findings of fact states that

"Donnelley does not plan to solicit advertising after July 1, 1986, for any Donnelley directory to be distributed into any distribution area of a Bell transition directory with the sole exception of the five 'neighborhood' directories, until after

Furthermore, Donnelley has not indicated how its sales force which is soliciting for the Bell transition directories will respond to inquiries concerning the forthcoming Donnelley proprietary directories. For example, a Donnelley salesperson soliciting advertisers for one of Bell's transition directories may be asked whether an advertisement in one of the new Donnelley directories would be more effective. The Donnelley salesperson's response would have to be carefully tailored to avoid violating paragraph 1(d) of the consent decree, which precludes Donnelley from "disparaging Bell of Pennsylvania or Bell of Pennsylvania's directories directly, indirectly or by implication." Although Sullivan suggested ways in which Donnelley salespeople would reply to this hypothetical question, he also testified that Donnelley had not yet instructed its sales force on how to respond to this type of inquiry and that no proposal addressing this issue had been put in writing by Donnelley's management.

What I am being asked to do, in effect, is issue an advisory opinion delineating what Donnelley may undertake to do on its own behalf after July 1 consistent with the restrictions imposed by the consent decree. Supposedly the consent decree was written for this very purpose; if so, I have to question why the matter of Donnelley's conduct after July 1, 1986 was left so open to dispute.

Whether viewed in terms of standing or ripeness, I conclude that the present controversy is not appropriate for judicial resolution. Proper adjudication requires a factual context which is sufficiently concrete to ensure resolution of the issues. A factual setting as ill-defined as the one before me cannot support a decision on the mer-

its.[4] I will be in a better position to determine whether Donnelley has violated the terms of the consent decree when it has been proven to me precisely what Donnelley has actually done after July 1.[5]

Accordingly, I decline to rule on plaintiff's motion to enforce on the present state of the record and will deny the motion to enforce.

the service order close date for that Bell transition directory."

4. Counsel for Bell, in his closing, apparently conceded that he wasn't sure exactly what Donnelley had planned to do after July 1, 1986, decrying Donnelley's "chameleon-like" efforts to "dance around" the consent decree.

5. Bell has also argued that Donnelley's planned solicitation of Philadelphia after July 1, 1986 constitutes a breach of its contractual obligation

to use its best efforts on behalf of Bell. Bell contends that Donnelley cannot exert its best efforts on Bell's behalf in Philadelphia while soliciting in Philadelphia for its own directories.

Bell has traditionally established sales projections for all of its directories. If the transition canvasses performed by Donnelley produce revenues which equal or exceed Bell's projections, I would be hard put to say that Donnelley had not exerted its best efforts on behalf of Bell.